MARY T. COLLIER, Respondent, *v.* EMELINE MILLER et al., Executors, etc., Appellants, et al., Respondents.

In order to found an estoppel upon mere silence, it must appear that there was a duty and opportunity, on the part of the party keeping silent, to speak, and that he was conscious that his silence was, or would operate as, a fraud and knew or ought to have known that some one was relying upon his silence and would be injured thereby.

H. & R. sold and conveyed certain premises; $6,000 was paid down and each received a separate mortgage for his share of the unpaid purchase money. It was agreed between them orally at the time of sale that the mortgage of H. should have the preference and it was first delivered and recorded, with the consent of R. and for the purpose of executing the agreement. R. assigned his mortgage to W., who took the assignment in good faith, believing the two mortgages to be equal and concurrent liens. H. knew at the time the mortgages were taken that R. intended to assign his mortgage to W. In an action to foreclose the last named mortgage, *held*, that it was to be assumed that it was one of the conditions upon which H. joined in the sale, that his mortgage was to have the preference, and so, that the agreement to that effect was founded on a good consideration and was valid; that no duty was imposed upon H. to seek out W. and disclose to him the arrangement, and so, silence on the part of the former did not estop him, or an assignee of his mortgage from claiming the preference.

Reported below, 62 Hun, 99.

(Argued February 6, 1893 ; decided February 28, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made December 5, 1891, which affirmed a judgment in favor of plaintiff and of defendant, Peter S. Anderson, entered upon a decision of the court on trial at Circuit.

This action was brought for the foreclosure of a mortgage executed by Martin H. Stufflebun to Richard Miller, and assigned by him to Arnold Wise who assigned the same to Allen S. Miller who, on a subsequent assignment guaranteed

its payment; said mortgage and guaranty were afterwards assigned to plaintiff.

The executors of Allen S. Miller, who died before the commencement of this action, Peter S. Anderson, the assignee of another mortgage executed by said Stufflebun, to one Harvey Miller, on the same premises and bearing even date with the mortgage in suit, and the next of kin and heirs at law of said mortgagor, who died before this action was commenced, were made defendants.

Plaintiff asked that the liens of said mortgages and the rights of the holders of them be adjudged, and in case of a deficiency that a judgment for such a deficiency should be awarded to plaintiff against the executors of the will of Allen S. Miller. The mortgaged premises were owned by said Harvey and Richard Miller, who were brothers, and conveyed by them to said mortgagor, he paying $6,000 of the purchase money and giving to each of the brothers a mortgage as aforesaid, for his share of the unpaid purchase money. It was orally agreed between the brothers at the time of the sale that Harvey's mortgage should have the preference, and with the intent to carry out this agreement his mortgage was first delivered and was recorded a day prior to the recording of Richard's mortgage. It was adjudged that the mortgage executed to Harvey was entitled to priority over that held by plaintiff, and should be first paid out of the proceeds of sale, and in case of deficiency that plaintiff was entitled to judgment therefor upon the guaranty.

Further facts are stated in the opinion.

*Jacob F. Miller* for appellants. The time of record does not touch the case, as the Recording Acts protect only a subsequent *bona fide* purchaser of the same mortgage. (*Green* v. *Warwick*, 64 N. Y. 226; *Rhoades* v. *Canfield*, 8 Paige, 545; *Jones* v. *Phelps*, 2 Barb. Ch. 441; *Granger* v. *Cranch*, 86 N. Y. 494; *Stafford* v. *Van Rensselaer*, 9 Cow. 316; *Douglas* v. *Peele*, Clarke, 564; *Decker* v. *Brice*, 83 N. Y. 215; *Seymour* v. *McKinstry*, 106 id. 242.) The mortgages being pre-

sumptively equal, their relative value could only be changed by some valid agreement to make them unequal. There was no such agreement. The alleged conversation between the mortgagees, even if it actually took place, could not amount to an agreement. (1 Pars. on Cont. [7th ed.] 455; *Bush* v. *Tilly,* 49 Barb. 603; Jones on Mort. § 96; *Quarternos* v. *Kennedy,* 29 Ark. 544; *Herman* v. *Roberts,* 119 N. Y. 42.) Harvey's alleged agreement with Richard was void, for Mr. Wise was, in equity, the owner of the mortgage, and the agreement, to be valid, should have been made to him. (Willard on Real Estate, 114, 115; *Champion* v. *Brown,* 6 Johns. Ch. 402; *Watson* v. *Le Row,* 6 Barb. 484.) There was no agreement which the law will enforce at any time between the parties. (*Birdsall* v. *Patterson,* 51 N. Y. 47; Code Civ. Pro. § 993.) As Harvey could not enforce the alleged priority of his mortgage as against Richard, neither can his assignee enforce it as against Richard's assignee, for the assignee takes the case of his assignor. (*Bush* v. *Lathrop,* 22 N. Y. 535; *Schafer* v. *Reilly,* 50 id. 61; *Trustees, etc.,* v. *Wheeler,* 61 id. 88; *Green* v. *Warnick,* 64 id. 220; *Crane* v. *Turner,* 67 id. 437; *Westbrook* v. *Gleason,* 79 id. 30; *L'Amoreux* v. *Brandenburgh,* 7 Paige Ch. 316, 323; *Frear* v. *Sweet,* 118 N. Y. 462; *Holcomb* v. *Campbell,* Id. 53; *Fairbanks* v. *Sargent,* 117 id. 335.) If Richard knew of any infirmity in the mortgage whereby it would not be exactly what it purported to be, he was bound to make it known. (Thomas on Mort. § 378; *Bennett* v. *Buchan,* 61 N. Y. 226.) Richard's alleged agreement with Harvey, if made at all, would render him liable to his assignee to the extent that the mortgage to him was impaired by it. If impaired at all, it must have been so in favor of Harvey. (*Delaware Bank* v. *Jarvis,* 20 N. Y. 229; *Marford* v. *Davis,* 28 id. 485; *Andrews* v. *Gillespie,* 47 id. 492; Story on Prom. Notes, § 118; *Mandeville* v. *Newton,* 119 N. Y. 14.) But if Harvey and Richard actually made the agreement which they now claim they made, and concealed it from Arnold Wise, it is absolutely void as against Arnold Wise and his assignees, and will not be enforced by a

court of equity. Their concealment and silence operated as a fraud. (Herman on Estoppel, §§ 917, 924, 929, 938, 943, 951, 954, 965, 978; *Packard* v. *Sears*, 6 Ad. & El. 474; *McClare* v. *Lockard*, 121 N. Y. 312; *Dailey* v. *Rector*, 50 Am. Dec. 245; *Thomas* v. *Sanborn*, 35 id. 490; *Frost* v. *S. M. Ins. Co.*, 49 id. 234; *T. B. Co.* v. *Duncan*, 86 N. Y. 228; *Wendell* v. *Van Rensselaer*, 1 Johns. Ch. 344; *Kirk* v. *Hamilton*, 102 U. S. 76; *Ram* v. *Pole*, 2 Vern. 239; Story's Eq. Juris. §§ 208, 228, 257, 333, 384, 385, 389, 390, 395; *Carr* v. *Bruse*, 81 N. Y. 584; *Comsey* v. *Martin*, 132 id. 556.) The executors of the will of Allen S. Miller, deceased, having advertised for claims according to law and accounted before the surrogate, and paid over the moneys held by them according to the terms of the will, have no further liability, and the judgment against them should be reversed. (Code Civ. Pro. § 2742.) The defendant Emeline Miller cannot be held liable for any deficiency in this action. (*Dodge* v. *Stevens*, 94 N. Y. 216; *Selover* v. *Coe*, 63 id. 438; *Schermerhorn* v. *Baebydtt*, 9 Paige, 28; *Stuart* v. *Kessain*, 11 Barb. 271; *Van Wezel* v. *Wyckoff*, 3 Sandf. Ch. 525; *Smith* v. *Roberts*, 91 N. Y. 477; *E. S, Bank* v. *Goldman*, 75 id. 137; *Leonard* v. *Morris*, 9 Paige, 90; Code Civ. Pro. § 1627; Thomas on Mort. [2d ed.] § 597.)

*Levi F. Longley* for respondent Anderson. Where two mortgages have the same date, and are acknowledged and delivered at the same time, the understanding, agreement and intention of the parties will control, as to which shall have a preference over the other, so as to be a prior lien upon the premises. (*Jones* v. *Phelps*, 2 Barb. Ch. 440; Thomas on Mort. [2d ed.] §§ 281, 460; *Grünger* v. *Crouch*, 86 N. Y. 494; *Westbrook* v. *Gleason*, 79 id. 41; *Freeman* v. *Schroeder*, 43 Barb. 618.) The mortgage first recorded is presumptively the prior lien. The burden is, therefore, upon the holder of the junior mortgage to overcome this presumption of law. Under the understanding or agreement proved in the case, the law, for the purpose of carrying into effect the intention of the parties, will presume the one delivered before

the other. (*Freeman* v. *Schroeder*, 43 Barb. 620.) This understanding, agreement or intention to give priority to Harvey's mortgage, under the settled rules governing such an understanding, agreement or intention, required no separate consideration to support it. (*Smith* v. *K. L. Ins. Co.*, 84 N. Y. 594; *McCraith* v. *N. M. V. Bank*, 104 id. 414.) The attempt by plaintiff to show that the agreement between Richard and Harvey Miller was in itself a fraud, had no evidence to support it. (*Littam* v. *Goldman*, 72 N. Y. 506.) The fact that the two mortgages were purchase-money mortgages has no bearing upon the question. (*Stafford* v. *Van Rensselaer*, 9 Cow. 318.) The several assignees of the Richard Miller mortgage took the same subject to the agreement for priority. (*Stafford* v. *Van Rensselaer*, 9 Cow. 316; *Decker* v. *Boice*, 83 N. Y. 215; *Greene* v. *Warnick*, 64 id. 220; *Westbrook* v. *Gleason*, 70 id. 40.) The rule that the contents of a written instrument or contract in writing, may not be contradicted or modified by conversations or oral agreements which preceded the execution of the instrument has no application. (*Smith* v. *Roberts*, 91 N. Y. 470.) Findings of fact will not be reviewed here. (*Reynolds* v. *Robinson*, 82 N. Y. 106; *Raux* v. *Brand*, 90 id. 312.) The right of the defendant to have foreclosure of his mortgage in this action under his counterclaim rests upon undisputed authority. The counterclaim is properly set up in the answer. (Code Civ. Pro. §§ 500, 501; 43 Hun, 521.)

*C. P. Collier* for plaintiff, respondent. The two mortgages to Richard and Harvey Miller, now held and owned by the plaintiff and defendant, Anderson, respectively being purchase-money mortgages, dated, executed and delivered on the same day, are presumptively of equal lien, and presumptively neither is prior to the other in lien. Allen S. Miller having guaranteed the payment of the plaintiff's bond and mortgage, it was proper for the plaintiff to make his executors parties for the purpose of charging them with the deficiency. (*Humphreys* v. *Hayes*, 94 N. Y. 599; *Glacius* v. *Fogel*, 88

id. 434; Wiltsie on Foreclosure, § 214.) Allen S. Miller guaranteed the payment of this mortgage; his estate is, therefore, primarily liable, and consequently no objection can be raised by his representatives to being made liable for any deficiency arising out of the foreclosure of the mortgage guaranteed. (*McMurray* v. *Noyes*, 72 N. Y. 524; *Remsen* v. *Graves*, 41 id. 471.) The judgment of the court below directing that Emeline Miller pay the deficiency to the extent of such moneys received by her from the estate of Allen S. Miller was proper and should stand. (*Collins' Petition*, 6 Abb. [N. C.] 227; *Hurd* v. *Callahan*, 9 id. 374; *Humphreys* v. *Hayes*, 94 N. Y. 594.) This action was properly brought, and all the persons necessary for the proper determination of the matters in litigation, and to enable the court to grant the prayer of the plaintiff's amended complaint, are parties to the action, and no others were necessary parties. (*Leonard* v. *Morris*, 9 Paige, 90.)

FINCH, J. The two mortgages given to the brothers, Harvey and Richard Miller, respectively, by their grantee, and the priority of which, one over the other, is the subject of dispute, would have been concurrent liens upon the land in the natural order and developement of the transaction, and having reference only to the equality of a common ownership of the consideration. But neither mortgage, on its face, gave any notice of the concurrent existence and lien of the other, and its purchaser would not and could not be deceived merely by its terms. If he bought without examination of the record, and omitting all inquiry, his situation would differ in no respect from that of one who finds his security subject to a prior incumbrance, the existence of which he might have ascertained by the exercise of proper diligence. When Wise took an assignment of Richard's mortgage, therefore, the mere transfer, in and of itself, gave him no information whether there was or was not another existing incumbrance of equal or prior lien, and his duty was that of inquiry and examination of the record as in any other case of the purchase of a mortgage

security, which may or may not be a subordinate lien upon the land. We are not at liberty to assume that Wise made any such inquiry. The counsel who acted for him testified that he did, and was told in the presence of the two brothers, and with their assent, that they had conveyed the land in which they were equal owners, and taken back a separate purchase money mortgage to each, which were equal and concurrent liens. There was a denial on the part of the brothers, and a sharp controversy over the question of fact, which was submitted to the jury as a special issue. They found in favor of the defendants, and their verdict confirmed by the finding of the court, compels us to assume, somewhat against our impressions of the truth, that no such inquiry and no such representations were made, and leaves us confined to the bare inference that Wise had knowledge of the existence of the two mortgages from some extrinsic source. The mortgage which he took recited that the conveyance of the land to the mortgagor was by the two brothers and their mother, and while not necessarily giving information of more than one mortgage, is supplemented by the finding that Wise took his assignment in good faith, believing the two mortgages to be equal and concurrent liens. How he came to know that there were two such mortgages the evidence does not specifically disclose, but does indicate the fact found, and we are at liberty to assume that he did know it, and that the arrangement between the brothers by which Harvey's mortgage was agreed to be and became the first and prior lien was concealed from and unsuspected by him when he accepted the transfer.

That arrangement was by parol, proved to the satisfaction of the court and expressly found. It is now argued that such agreement was void for want of a consideration to support it. We cannot concur in that view of the transaction for two reasons. The agreement was at the time of the sale, and an element or condition of its final consummation. It may fairly be assumed to have been one of the conditions upon which Harvey joined with Richard in making the sale and delivering the deed, and without which he might have refused to com-

plete the sale by declining to accept a concurrent mortgage. Beyond that, the agreement was executed in fact by a prior delivery to Harvey of his mortgage, followed by a prior record, with the express consent of Richard, and for the avowed purpose of fully executing the agreement.

Harvey's mortgage was recorded on April first, and thereafter assigned to the defendant, Anderson. Richard's was recorded the next day and assigned to Wise, from whom, through intermediate owners, it has come to the plaintiff, who seeks to foreclose it. Both sides substantially concede that the record has not so changed the rights of the respective assignees as to prevent each from standing in the place of his original assignor. (*Greene* v. *Warnick*, 64 N. Y. 220; *Decker* v. *Boice*, 83 id. 215; *Westbrook* v. *Gleason*, 79 id. 30.) The question thus comes to the single point whether Harvey and his assignee are equitably estopped from asserting the agreed priority of lien as against Wise and his assignees, and that is the principal ground of the appellant's argument.

In considering that question we must upon the findings assume as facts that Richard's mortgage to the eye of Wise, with the knowledge that he had, disclosed no defect and permitted a belief that it was concurrent and not subordinate; that the parol agreement which postponed its lien would or might be unknown to a purchaser; that so it became an instrument or means available for a possible deception; that Harvey, conscious of these facts, knew in addition that Richard was intending to turn the mortgage over to Wise in payment for land about to be purchased. So much Harvey knew, and that is all that he knew, and upon that knowledge it is insisted that Harvey, by his silence, is estopped from asserting any priority of lien as against Wise, who was thereby deceived. Undoubtedly mere silence may sometimes found an estoppel, but it must be when there is a duty and opportunity to speak, when silence either is or operates as a fraud to the consciousness of the party who does not speak, and when he knows or ought to know that some one is relying upon his silence and will be injured by that silence. (*Viele* v. *Judson*, 82 N. Y.

40.)   In other words the omission to speak must be, relatively to the party harmed, an actual or constructive fraud. (Herman on Estoppel, § 954.)   The facts here approach but do not reach that standard.   I do not think that they imposed upon Harvey the duty of seeking out Wise and disclosing to him the arrangement made.   There was nothing to suggest to strict honesty of purpose the need of any such action.   While he knew that Richard was intending to assign his mortgage to Wise, he did not know and was not bound to suspect that Richard would assign it as a concurrent mortgage, and conceal the existing truth and practice a deceit upon his assignee. Harvey had given his mortgage immediate priority of record. That fact shows that he meant and intended no concealment or artifice.   He supposed it to be notice of the truth to all the world, and with some reason at least, since the priority of record raised a presumption of priority of delivery. (*Freeman* v. *Schroeder*, 43 Barb. 618.)   Nor was there anything in the priority which he obtained which so affected the value of Richard's mortgage as to arouse in Harvey's mind either a belief or suspicion that Wise would not accept Richard's security if the truth was told.   Something over six thousand dollars had been paid by the mortgagor in cash, over and above the two mortgages.   Apparently the land was a full and ample security for both, and no peril attached to the holder of a second mortgage.   Under such circumstances it is impossible to say that Harvey, by silence, committed an actual fraud.   There is no such finding and no request for one, except that contained in the request to find facts involving it, which were negatived by the verdict of the jury and the conclusion of the court.   Nor can we say that Harvey's silence was a constructive fraud.   He had no reason to know and was not bound to anticipate that his brother would conceal the agreed priority.   He had a right to assume that the truth would be told and the actual facts be made known.   He did not know that Wise would take the mortgage with any reliance upon his silence, and it is very certain that Wise did not, but relied upon and was deceived by the silence of Richard alone.

If Wise had given Harvey an opportunity to speak under conditions which made it his duty to do so, a very different situation would be disclosed, but here we are asked to hold that knowledge by Harvey that Richard's mortgage was about to be assigned imposed upon him the duty of seeking out the new assignee and warning him, and that his non-performance of that duty would be justly relied upon by such assignee. That, I think, is going quite too far. The party asserting such an estoppel should at least put his adversary consciously in the wrong, and the facts found in this case are entirely consistent with honesty of action and of purpose on the part of Harvey.

There is a further claim made in behalf of the appellant that Wise before the assignment to him became the equitable assignee of Richard's mortgage as it was to be given by the mortgagor and so no change in its terms or lien was possible without the assent of Wise. There are no facts on which that contention can stand. Richard made a contract with Wise in January, 1870, for the purchase of the latter's farm. The conditions of that contract are not disclosed. It is not shown that at that date Richard & Harvey had arranged to sell their farm or take any mortgages and there is an utter absence of proof that Wise had agreed to accept such a mortgage, or that Richard had promised to furnish it. All that we know is that on the succeeding first of April, Richard "expected" to use his mortgage in the payment of Wise. Out of that bare expectation and in the absence of further facts it is impossible to construct a theory of equitable assignment.

The further objections to the judgment as against the personal representatives and a legatee of the estate, of the guarantor of plaintiff's mortgage are sufficiently answered by the opinion of the General Term.

The judgment should be affirmed with costs.

All concur.

Judgment affirmed.