GEORGE A. LEVINSON et al., Plaintiffs, *v.* EMORY MYERS, GEORGE H. FAULKNER et al., Defendants.

(Supreme Court, Greene Trial Term, June, 1917.)

Taxes — sale of land for unpaid — deeds — ejectment — actions — jurisdiction of comptroller of state of New York — estoppel — Tax Law, §§ 132, 134.

On February 13, 1912, the comptroller of the state executed and delivered a deed of certain lands sold December 10, 1910, for the taxes of the years 1905, 1906, 1907 and 1908 to defendant F., who thereafter caused the notice required by section 134 of the Tax Law (Laws of 1909, chap. 62) to be served upon the occupant of the premises. In an action of ejectment brought in 1915, against F. and his grantee, it appeared that prior to and at the time of the tax sale, and for some time thereafter, F., who had charge of the property for the nonresident owners, collected the rents and either applied the same to certain school taxes or remitted them to certain of the plaintiffs, and that during such time F. was the executor of a certain estate which held the mortgage against the property. It also appeared that in 1909, the taxes for 1906, 1907 and 1908 were paid by the owners. No one informed the plaintiffs of the tax sale until about August, 1912, and the tax deed was not recorded until January, 1913, and two months thereafter F. sold the premises to the other defendant herein who entered into possession and made extensive improvements on the property.

*Held,* that as the owners of the property, under section 132 of the Tax Law, had the right to bring an action to set aside the sale within five years of the expiration of the period allowed by law for the redemption of the land sold the comptroller had no jurisdiction to sell the property for the taxes of 1907 and 1908.

That plaintiffs being cognizant of all the facts relating to the property were in duty bound to forbid improvements thereon by the grantee of F., by which they knew their property, dilapidated and run down, would be improved and they financially benefited, and their conduct in remaining silent was dishonest and fraudulent and they are estopped from maintaining the action against the grantee of F. and the complaint should be dismissed.

ACTION of ejectment.

Isidore Solomon (William D. Brinnier, Jr., of counsel), for plaintiffs.

John L. Fray, for defendant George H. Faulkner.

Benjamin Tallmadge (Edward Lackey, of counsel), for defendants Emory Meyers and Minnie Meyers, his wife.

HASBROUCK, J.   On the 26th day of November, 1901, Sarah Levinson and Bernard Annenberg by deed from one Louise Wilbur became the owners of a plot of ground in the village of Hunter, Greene county, being about 118 feet on Main street and bounded in the rear by the Schoharie creek.   Bernard Annenberg died in 1905 intestate, leaving him surviving the plaintiffs except George A. Levinson who is not a proper party to the above action.   The Annenbergs, from the time of the purchase of this property by the father, occupied the same during the summers up until the year 1909.   It was assessed for the taxes of the years 1905, 1906, 1907 and 1908 by the descriptions following:

"For year 1905, name of taxable person, Sarah Levinson; taxable real property description 'h and l;' full value of real property taxed, $300.00; tax $3.78.

"For year 1907, name of taxable person, Sarah Levinson; taxable real property description 'h and l;' full value of real property taxed $300.00; tax $3.24.

"For year 1908, name of taxable person, Sarah Levinson and Company; quantity and description of land 'h and l;' full value of real property taxed $300.00."

Such proceedings were had and taken that on the 10th of December, 1910, the above property was sold at a tax sale to the defendant George H. Faulkner. On the 13th day of February, 1912, the comptroller of the state executed and delivered a deed of the said property to the said defendant Faulkner and thereafter the said Faulkner caused the notice required by section 134, chapter 62 of the Laws of 1909 to be served upon the occupant of said premises, one Edward Rein.

Prior to and at the time of the sale of said property for taxes and for some time thereafter said George H. Faulkner had charge of the renting of the premises described in the complaint, rented the same and collected the rents thereof and applied the same to certain school taxes or remitted them to certain of the plaintiffs upon a compensation of ten per cent. During such time the said defendant Faulkner was the executor of a certain estate among the assets of which was a mortgage for $300 against the said property. On or about the 17th day of August, 1909, the taxes on the said property for the years 1906, 1907 and 1908 were paid by the owners and at the time of the sale there only remained the taxes of 1905 unpaid. The defendant Faulkner did not immediately inform any of the plaintiffs that the property

had been sold for taxes. There is no evidence that anybody informed the plaintiffs of the sale of this property for taxes until late in July or early in August, 1912. The tax deed was not recorded until January 13, 1913. On the 3d day of March, 1913, the defendant Faulkner sold the premises in question to the defendant Meyers and he entered into possession of them, made improvements thereon, laying out and expending thereafter the sum of $1,800.

In May, 1915, the above entitled action was commenced. It is an action of ejectment brought against Faulkner and Meyers claiming under the tax title. The plaintiffs claim that Faulkner had no title, that the sale was inefficacious and the deed void for several reasons:

*First.* That there is no description of the property of a non-resident to base a sale upon.

*Second.* That the property was assessed as resident property, when the owners were non-resident.

*Third.* That the sale was had for the taxes of three years, 1905, 1907 and 1908, though the taxes for 1907 and 1908 had been paid.

The answer of the defendants is that the sale was a valid sale, that the plaintiffs are barred by the provisions of the limitations contained in sections 131 and 132 of the Tax Law relating to real estate and that in any event the plaintiffs are estopped by an estoppel in pais from claiming title to the said lands. Without discussion of any of the other imperfections claimed by the plaintiffs or existing in the title of the defendants, I am constrained to the opinion that the comptroller was without jurisdiction to sell the property for the taxes of 1907 and 1908.

" When a tract of land is assessed for the taxes of several years and the taxes have been paid for one or more years but the land is sold for its whole amount

assessed, this renders the sale void.'' 2 Blackw. Tax Titles, § 822 and cases cited.

Section 132 of the Tax Law especially provides that where there has been a payment of the taxes it constitutes such a defect in a sale that the owner may bring an action within five years from the expiration of the period allowed by law for the redemption of the land sold. No pretense is made in the action at bar that five years had thus elapsed. *Meigs* v. *Roberts,* 162 N. Y. 379.

There remains but the question of whether the plaintiffs should be estopped by their conduct in suffering the defendant Meyers to make improvements upon the property. It is a well recognized principle of equitable jurisdiction that no title may be acquired by estoppel unless fraud lies at the base of the transaction. It is also a well known principle affecting real estate that a stranger may not expend money in improving the land of another and ask indemnity for such expenditure against the actual owner whether such owner knew or was ignorant of the expenditure. It is apparent any such moneys would be expended at the risk of the stranger to the title. Another situation is presented where a claimant to the title has expended money in the improvement of land where ownership is disputed. Meyers held the warranty deed of Faulkner. He made the improvements relying upon his title. But that alone could not save him from loss. The only thing that can relieve him against the error of expending his moneys on the lands of another is fraud on the part of the actual owners— the existence in them of a fraudulent intent. 2 Pom. Eq. Juris. (3d ed.) § 807; Lawson Rights & Rem. § 2701; 1 Story Eq. Juris. 391.

Was there a fraudulent intent in the plaintiffs? That would depend of course upon what the plaintiffs

knew regarding their own title and the making of the improvements. Since they are all brothers and sisters it is a fair inference that what two of them knew with regard to the property in question all knew. I am persuaded that they knew that in August, 1909, the taxes on the property were paid and a receipt given by the county treasurer of Greene county. They knew in July or August, 1912, that the property had been sold for taxes. Indeed Faulkner in letters to Mrs. Sarah Annenberg dated respectively, January 17, 1913, February 20, 1913, and in a letter to Sarah Levinson dated January 17, 1913, informed the plaintiffs of the sale for taxes and that Faulkner claimed to own the property and was seeking a purchaser. Mrs. Levinson said to defendant Meyers in 1913 while the property was being improved, " I hear you have bought the place and are fixing it up." Joe Annenberg spent three or four weeks during the summer of 1913 in Hunter. In August his mother and brothers Solomon and Abraham were there. Joseph saw the additions being made to the kitchen roof and railing on the porch. The plaintiffs undoubtedly knew of the sale of the property to Meyers. They knew it was very much dilapidated and run down for they ceased to occupy it in 1908 and did not occupy it except by tenants at a nominal rent after that year. Several of the plaintiffs spent the summer of 1913 in Hunter. Their intimacy with the village was such that it is fairly inferable that they knew that Meyers had taken possession of their premises in April and had started to improve it. They knew the reward of silence. If they failed to forbid the improvements, or the defendant Meyers the premises, they knew their land would be improved and they financially benefited. Resting under the duty of speaking they remained silent. Honesty requiring they should make their ownership known, they failed

to assert it. Such conduct was not honest. It was fraudulent.

" There is no principle better established in this court, nor one founded on more solid considerations of equity and public utility, than that which declares, that if one man, knowingly, though he does it passively, by looking on, suffers another to purchase and expend money on land, under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person. It would be an act of fraud and injustice, and his conscience is bound by this equitable estoppel." *Wendell* v. *Van Rensselaer,* 1 Johns. Ch. 353; *Storrs* v. *Barker,* 6 id. 166.

I do not think the provisions of section 1531 apply to the case at bar where the decision turns upon an issue of fraud. Complaint dismissed. Costs to the defendant Meyers.

Judgment accordingly.